# MANOGUE v. HERRELL.

WILLS; UNDUE INFLUENCE; EVIDENCE; WITNESSES;
DECLARATIONS.

1. A trial court properly directs the jury to return a verdict sustaining a will, attacked as having been made under duress and undue influence and as having been revoked or annulled, where its due execution and the fact that the testator knew its contents are admitted, and aside from the fact that the testator was 85 years old when he made the will, and it contains an unequal distribution of his estate among his children, there is nothing to raise the slightest suspicion of unfairness.
2. The testimony of one party to a will contest as to declarations made by an opposing party who has died pending the trial, is inadmissible under R. S., Sec. 858; following Patten v. Glover, 1 App. D. C. 466.
3. Where a will is attacked as having been made under duress and undue influence, but its due execution and the fact that the testator knew its contents are admitted, declarations by the testator of his intention to change his will and make a new one, are inadmissible, in the absence of direct proof of fraud and undue influence; distinguishing Throckmorton v. Holt, 12 App. D. C. 552.

No. 821. Submitted November 8, 1898. Decided November 22, 1898.

HEARING on an appeal by the caveators from an order admitting a will to probate after trial of issues certified for trial by jury. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Henry E. Davis* and *Mr. Edwin Forrest* for the appellants.

*Mr. O. B. Hallam* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. This is an appeal from a judgment admitting to probate the last will and testament of Hugh McCaffrey, who died in the District of Columbia, where he had resided for years, about March 9, 1897.

The testator left five children and a grandson, who was

the son of a deceased daughter, to each of whom he devised specific parts of his estate, which consisted almost entirely of improved real estate in the city of Washington. The devise to his daughter, Mary Quigley, apparently comprised the most valuable part of the estate.

When the will was offered for probate, four of the children, Lizzie Manogue, James B. McCaffrey, William H. McCaffrey and F. T. McCaffrey, joined in a caveat in opposition thereto.

The executors named in the will, John E. Herrell and Patrick Maloney, and Mary A. Quigley, the principal devisee, answered the caveat, and issues were promptly framed and transmitted for trial by jury in the Circuit Court.

Upon the trial it was stipulated that the jury should return affirmative answers to the questions, respectively, whether the testator had executed the will in proper form and manner, and knew the contents of the same.

The remaining issues were: First, whether the will had been executed under duress practiced by Mary A. Quigley; second, whether it had been executed under undue influence exercised by her; and, third, whether it had been revoked or annulled in a lawful manner?

When the caveators, who opened the case, after admitting the formal execution of the will, had introduced all of their evidence, the court, upon the motion of the caveatees, directed the jury to return the answer "No" to each of the questions propounded as aforesaid.

2. In determining the point raised on the exception taken to this action of the court, we think there is no occasion whatever to review the evidence. Aside from the fact that the testator was about eighty-five years old when he made the will, and that it contains an unequal distribution of his estate among his children, there is nothing to raise the slightest suspicion of unfairness. It was admitted that he executed the will in due form of law, with three subscribing witnesses, and that he knew its contents. No one of these

witnesses was called to testify, and it does not appear when or by whom the will was written, or where, or under what circumstances, it was executed.

There is not one fact in the whole of the evidence that would warrant an inference that Mary A. Quigley exercised, or attempted to exercise, any influence whatever upon the mind of her father, the testator. So far as anything in the testimony tends to show, the preference manifested for her was the deliberate, voluntary act of the testator. There was nothing to submit to the jury, and the court was right in directing them to return the only possible answer that could be given.

3. The next assignment of error is on exceptions taken to the refusal of the court to permit proof of certain declarations made by Mary A. Quigley, who died before the cause came on to be tried. The witness offered for the purpose was Lizzie Manogue, one of the caveators. Having testified to a family meeting held to hear the will read, she offered to prove that Mrs. Quigley then and there said: "It was a very unjust will;" and that "she was willing to make it just;" and, for "God's sake settle it in this house, and do not let it get out of the walls of this house." She further offered to testify that she called on Mrs. Quigley immediately after the funeral to learn her intentions, and was told by her that she intended "to adhere strictly to the will." Witness replied that she and others would not; and Mrs. Quigley asked if they would take the money and let her have the property.

This testimony was properly excluded. It was the statement of a party to the suit, and one of the opposing parties was not a competent witness thereto. R. S., Sec. 858; *Patten* v. *Glover*, 1 App. D. C. 466, 478. It is unnecessary to consider whether the declarations were not incompetent evidence in any event, as having been made in a probable attempt to compromise the conflicting claims of the disappointed devisees.

4. The last assignment of error is founded on another exception taken to the exclusion of evidence offered by the caveators. Mrs. Ellen McCaffrey, the sister-in-law of the testator, and a witness for the caveators, was permitted to testify, without objection, that some time in the fall of 1896 she informed Mrs. Quigley of a conversation she had had with the testator, and then remarked to her: "Mary, your papa is going to break that will that he got Lottie to write." Mrs. Quigley answered: "Is that so, Aunt Ellen?" And witness rejoined, "Yes, Mary." Thereupon the caveators offered to prove the declarations of the testator, made in the conversation before referred to. The bill of exceptions recites that, "About the fall before the death of the testator, the latter declared to the witness his desire and purpose to do away with the will, which he characterized as the will that Lottie had made, and make a new one, and that he must do right or fair by his children; that the witness reported this conversation to Mrs. Quigley the following Sunday [as herein above stated]; and that on the Monday following, or on Monday or Tuesday, a friend of Mrs. Quigley's inquired of the witness whether the will had been changed."

Again, the bill of exceptions recites that "the caveators then offered to prove by the witness that on the day before the testator was stricken with his fatal illness, in a conversation with the witness, he declared it to be his purpose to change the will in controversy and treat all his children alike; that he was going to have a family gathering—a reunion—in a few days, when all could be happy again."

We can find no error in the exclusion of this evidence. We have had occasion recently to consider the question of the admissibility of the declarations of a testator in a case where the issues were forgery and revocation. *Throckmorton* v. *Holt*, 12 App. D. C. 552, 573, 579.

Under the circumstances shown to exist in that case, it was held that the declarations were admissible. There was

no direct proof of execution; the subscribing witnesses had been long dead; and there was a great deal of evidence tending to show that the signature of the testator had not been written by him. Referring to certain authorities holding that under some circumstances the declarations of the testator are competent evidence where the will is assailed as the product of fraud or undue influence, we there said :

"We are unable to perceive a distinction in principle between the competency of declarations in a case like this where the fact of execution is in question, and in one where the will is assailed as the product of fraud and undue influence. In the latter case, the authorities generally concur in holding that the declarations of the testator and his relations with the parties are competent circumstances tending to throw light upon his state of mind and disposition. The only limitation is, that it shall not be received as proof of the independent fact or the truth of the things declared, but as suppletory only to direct proof of the alleged fraud and undue influence." Id. p. 579.

As we have seen, in the discussion of the first assignment of error, there was no evidence, direct or circumstantial, tending to show that the caveatee, Mary A. Quigley, had anything to do with the preparation and execution of the will, or that she had ever attempted to exercise any influence upon the testator in respect of the disposition of his estate. So far as the evidence shows, the will was his own voluntary act.

It follows that the judgment must be affirmed, with costs; and it is so ordered.                              *Affirmed.*